J-S13035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMAL FULLER | : | |
| | : | |
| Appellant | : | No. 286 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 20, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001780-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMAL FULLER | : | |
| | : | |
| Appellant | : | No. 346 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 20, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001878-2019

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: AUGUST 12, 2025**

Appellant Jamal Fuller appeals from the judgment of sentence imposed at Docket No. 1780-2019,[1] at which Appellant was convicted following a jury trial of two counts of possession with intent to deliver a controlled substance

---

[1] The appeal from the judgment of sentence entered at Docket No. 1780-2019 is listed at Superior Court docket 286 MDA 2024.

(PWID), and at Docket No. 1878-2019,[2] at which Appellant was convicted following a jury trial of one count of PWID and one count of simple possession of a controlled substance.[3] On appeal, Appellant challenges the sufficiency of the evidence, the order denying his suppression motion, the weight of the evidence, and the discretionary aspects of his sentence. After review, we affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> Regarding docket number 1780-2019, on January 17, 2019, Daine Arthur, of the Pennsylvania Office of Attorney General, charged Appellant with five (5) counts of [PWID][FN1] and one (1) count of fleeing or attempting to flee.[FN2] These charges stemmed from an investigation that was being conducted with the assistance of a confidential informant who was making controlled buys of crack cocaine and heroin from the Appellant on several occasions from October of 2018 through January of 2019.
>
> > [FN1] 35 [P.S. §] 780-113(a)(30).
> >
> > [FN2] 75 Pa.C.S. [§] 3733(a).
>
> A trial by jury was held before the undersigned, Judge Edward M. Marsico, Jr., from March 7-8, 2022. The jury returned verdicts of guilty on two counts of [PWID], and not guilty on the remaining counts . . . .
>
> Regarding docket number [1878-2019], on March 14, 2019, Nicholas Ishman of the City of Harrisburg Bureau of Police, filed a criminal complaint charging Appellant with two (2) counts of [PWID (heroin-fentanyl)], one count of simple possession of a

---

[2] The appeal from the judgment of sentence entered at Docket No. 1878-2019 is listed at Superior Court docket 346 MDA 2024.

[3] On April 24, 2024, this Court entered an order consolidating the appeals at 286 MDA 2024 and 346 MDA 2024 pursuant to Pa.R.A.P. 513.

controlled substance (cocaine base),[4]] and one (1) count of possession of firearm prohibited.[FN3] The charges stemmed from the execution [of] a search warrant at Appellant's residence.

[FN3] 18 Pa.C.S. [§] 6105(a)(1).

At [1878-2019], a trial by jury was held before the undersigned on September 13-14, 2021. The jury returned a verdict of guilty of one count of [PWID and one count of simple possession[5]]; the jury returned a verdict of not guilty for the remaining count of possession with intent to deliver and possession of a firearm prohibited.

Appellant was sentenced on April 20, 2022 at both dockets. At docket number [1780-2019], at Count 1 [PWID], the undersigned sentenced the Appellant to four (4) to eight (8) years of incarceration in a state correctional institution. At Count 2 [PWID], Appellant was sentenced to one (1) to two (2) years of incarceration, to run concurrently to the sentence at Count 1. At docket [1878-2019], Appellant received a sentence of five (5) to ten (10) years of incarceration, to run consecutively to docket [1780-2019] Count 1. [The trial court imposed a sentence of costs only on the conviction for simple possession of cocaine base at 1878-2019.[6]] Appellant received time credit from March 14, 2019 through April 20, 2022, for a total of 37 months and 6 days. [This resulted in an aggregate sentence of nine to eighteen years of incarceration.]

On May 2, 2022, [Appellant] filed a post sentence motion, which was denied by order issued on May 12, 2022. On July 28, 2023, the Appellant filed a petition [pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546] (hereinafter "PCRA") at docket [1780-2019]. On August 8, 2023, this court issued an order appointing Wendy Grella, Esquire as PCRA counsel. On August 28, 2023, the Appellant filed a PCRA [petition] at docket [1878-2019]; on the same day, the Appellant filed a Motion to Consolidate his PCRA filings. On September 13, 2023, this court

---

4 35 P.S. § 780-113(a)(16).

5 *See* N.T., 9/14/21, at 303-04.

6 *See id.*; N.T., Sentencing, 4/20/22, at 12.

issued an amended order consolidating the Appellant's PCRA [petitions].

On November 28, 2023, PCRA counsel filed a motion to reinstate [Appellant's] appellate rights *nunc pro tunc*. In that motion, PCRA counsel also indicated that she was resigning from private practice and asked that new PCRA counsel be appointed. On January 11, 2024, an order was issued reinstating Appellant's appellate rights and appointing Bill Shreve, Esquire as new PCRA counsel.

Trial Ct. Op., 6/7/24, at 1-3 (unpaginated) (some formatting altered and some footnotes omitted). Appellant filed a timely notice of appeal *nunc pro tunc* at each trial court docket. Both the trial court and Appellant complied with Pa.R.A.P. 1925. As noted above, this Court consolidate the appeals *sua sponte* on April 24, 2024.

On appeal, Appellant presents the following issues, which we have renumbered as follows:

1. Whether the evidence was sufficient to sustain the convictions.[7]

2. Whether the trial court erred in denying [Appellant's] motion to suppress?

3. Whether the verdicts were against the weight of the evidence.

4. Whether the trial court abused its discretion in sentencing [Appellant] to an aggregate sentence of 9 to 18 years of incarceration.

Appellant's Brief at 13 (some formatting altered).

_____

[7] "Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first." **Commonwealth v. Toritto**, 67 A.3d 29, 33 (Pa. Super. 2013) (*en banc*).

**Sufficiency of the Evidence**

In his first issue, Appellant argues that the evidence was insufficient to prove PWID at Docket Nos. 1780-2019 and 1878-2019.[8]  ***See id.*** at 31-38. Our standard of review for challenges to the sufficiency of the evidence is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and some formatting altered).

The Controlled Substance, Drug, Device and Cosmetic Act defines PWID as follows:

§ 780-113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

---

[8] Appellant has not challenged his conviction for simple possession of a controlled substance on appeal.

* * *

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

As noted, Appellant contends that the Commonwealth failed to establish that he possessed a controlled substance with the intent to deliver it at Docket Nos. 1878-2019 and 1780-2019.[9] **See** Appellant's Brief at 31-38. The trial court addressed Appellant's challenge to the sufficiency of the evidence at Docket No. 1878-2019 as follows:

> During the September 13, 2021 trial regarding docket number [1878-2019], Shelby Day, a detective with the Swatara Township Police Department, testified that she investigates drug cases. (N.T., 9/13/21, pp. 71-73). On March 11, 2019, she was working in an undercover capacity with a confidential informant (hereinafter "CI") setting up a drug buy. (**Id.** at 77). She arranged to buy two (2) bundles of heroin for $40 each through the CI. (**Id.** at 78). The CI identified the dealer as "T" and described him as a black male, approximately 30 years old. (**Id.**).

---

[9] Additionally, at Docket No. 1878-2019, Appellant argues that although he admitted possessing the contraband, he subsequently testified at trial that he did not want his girlfriend to get in trouble, so he claimed ownership of the contraband. **See** Appellant's Brief at 36-37. Further, in his argument concerning the convictions at Docket No. 1780-2019, Appellant asserts that at trial, he denied possessing the contraband at that docket. **Id.** at 38. We note that these arguments challenge witness credibility, and therefore, they are challenges to the weight of the evidence and not its sufficiency. **See Commonwealth v. Bloomer**, 327 A.3d 1282, 1287 (Pa. Super. 2024) (stating that "[a] sufficiency of the evidence review does not include an assessment of credibility of testimony offered by the Commonwealth. Instead, such arguments are more properly characterized as challenges to [the] weight of evidence.").

The CI used the number (***) ***-4069 to contact "T" and they arranged to meet in an alleyway near Chestnut Street in Harrisburg. (*Id.* at 80). "T" approached the vehicle and Detective Day handed the money to the CI, which he then exchanged for two (2) bundles of heroin from "T." (*Id.*). She then provided the heroin to Nicholas Ishman, another detective, at a pre-determined location. (*Id.* at 82).

Detective Day explained that the exchange was during the day, so she was able to see "T" and identified him as [Appellant]. (*Id.*).

Ken Platt testified that he is a detective with the Swatara Township Police Department and on March 14, 2019, he was working as part of the Dauphin County Crisis Response Team. (*Id.* at 99-100). On that day he was assisting in executing a search warrant for Detective Ishman on 1955 Chestnut Street in Harrisburg. (*Id.* at 100). Detective Platt breached the door of the residence, and he took his position. (*Id.* at 104). He observed [Appellant] run from an area where there was a couch and make his way across the living room floor to the steps. (*Id.* at 105). Once the occupants of the residence were detained for questioning, Detective Platt searched the living room area where he discovered a firearm under the cushion of a couch. (*Id.* at 108-110). The recovered handgun was a semiautomatic 9-millimeter. (*Id.* at 111) (Commonwealth's Exh. No. 11-A).

Detective Nicholas Ishman testified that he is a vice detective with the Harrisburg Bureau of Police and a member of the street crimes unit. (*Id.* at 123-124). He was the case officer for the controlled buy that occurred on March 11, 2019 between Detective Day, the CI and [Appellant]. (*Id.* at 125). He conducted surveillance of the area during the controlled buy and took video. (*Id.* at 129-131) (Commonwealth's Exh. No. 7). Following the buy, Detective Ishman applied for a search warrant that was executed at 1955 Chestnut Street on March 14, 2019. (*Id.* at 138-139). As the warrant was executed, the individuals in the residence were located and placed in the living room of the residence. (*Id.* at 142). There were four (4) adults [including] Appellant, two infants[,] and a teenager. (*Id.*). Detective Ishman began giving ***Miranda***[10] warnings when Appellant stated: "everything in the house is mine, they don't know anything about anything." (*Id.* at 143). Detective Ishman told Appellant to stop so he could finish

---

[10] ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

his **Miranda** warnings. (**Id.**). When he was done, he asked Appellant if he still wished to speak. (**Id.**). Appellant reiterated that everything in the house was his, including the gun in the couch. (**Id.**). Appellant also indicated there was "about" three (3) grams of heroin on the second floor. (**Id.**).

Detective Ishman searched an upstairs bedroom where Appellant directed him, and he found a Michael Kors bag with heroin and crack cocaine; a bag of marijuana was also found in the residence. (**Id.** at 144; N.T., 9/14/21, p. 153) (Commonwealth's Exh. No. 13). He also located a digital scale near the bag. (**Id.**). Two additional digital scales were found in the residence and a shotgun was found on the third floor. (N.T., 9/14/21, p. 157). A cellphone was also found on the floor near the couch where the firearm was recovered. (**Id.** at 160). Detective Ishman dialed the (***) ***-4069 number used to arrange the controlled buy, and the phone rang, so it was taken as evidence. (**Id.** at 161). No drug paraphernalia for use of drugs was found in the home. (**Id.** at 163).

Detective Ishman learned that the shotgun found on the third floor belonged to Aaron Willis, who was in the residence at the time. (**Id.** at 163-64). A small pink handgun was also found in a second-floor bedroom which belonged to Ikea Carroll, another resident of the home at the time. (**Id.** at 164) (Commonwealth's Exh. No. 12-F). Other than Appellant, none of the adults in the residence had a criminal background that would prevent them from possessing a firearm. (**Id.** at 167). Appellant had a May 20, 2009 conviction of robbery, which would have prevented him from possessing a firearm. (**Id.** at 169) (Commonwealth's Exh. Nos. 3,4,5). Detective Ishman took a recorded statement from Appellant the day of the execution of the warrant, where he again acknowledged the drugs and [the 9-millimeter semiautomatic handgun found in the couch] belonged to him. (**Id.** at 171) (Commonwealth's Exh. No. 18). Detective Ishman testified that no clothing or mail belonging to Appellant was found at the residence. (**Id.** at 176). The gun found in the couch was registered to a woman named Macelia Thompson; however, because Appellant admitted the gun was his, Detective Ishman did not attempt to speak with her. (**Id.** at 190-92).

Cory Dickerson, a detective with the Criminal Division of Dauphin County and the Dauphin County Drug Task Force, offered testimony as an expert [] in street level drug investigations. (**Id.** at 197-201). Detective Dickerson opined that the heroin, fentanyl

and cocaine found in the residence was possessed with the intent to deliver. (***Id.*** at 211). He based his opinion on the variety and quantity of drugs that were found, in addition to how the drugs were packaged. (***Id.*** at 212-14). Additionally, the presence of the gun and the location of the residence, 19th and Chestnut in Harrisburg, where drug trafficking is common, along with the fact that there was no drug use paraphernalia typical[] of a drug user, found in the residence. (***Id.*** at 214).

Appellant acknowledged that on March 11, 2019, he sold heroin in the controlled buy with Detective Day. (***Id.*** at 234). He was staying with his girlfriend, Ikea Carroll, at her residence at 1955 Chestnut Street off and on; [Appellant's] mother lived on the next block over. (***Id.*** at 238). On March 14th[, Appellant] had gotten to the residence at about 3:00 a.m.[,] and at 6:00 a.m. he heard a commotion outside of the door. (***Id.*** at 238-39). Appellant was told to clear the door and he ran upstairs. (***Id.*** at 240-41). He was not near the couch where the gun was found. (***Id.***). He watched the police search the couch and find the gun. (***Id.*** at 242). Appellant testified that Macelia Thompson is his girlfriend's friend, who visited the residence frequently when he was there. (***Id.*** at 244). Appellant explained that when the police read everybody in the residence their ***Miranda*** rights, he did not want his girlfriend getting in trouble, so he said everything was his. (***Id.*** at 246). He further testified that the gun and the drugs found in the second-floor bedroom were not his. (***Id.*** at 247). Appellant explained that the drug sale he made on March 11th was for someone else, but he did not say who because he did not want to get them into trouble. (***Id.*** at 247).

\*     \*     \*

Regarding docket [1878-2019], Appellant acknowledged to Detective Ishman that the drugs and gun found in the residence on Chestnut Street were his. [Appellant] further gave a recorded statement that reiterated this. At trial, Appellant testified that he lied when he said the items were his. Despite his explanation that he lied to avoid getting others in trouble, this inconsistency was for the jurors to weigh. In conjunction with Detective Dickerson's testimony that, in his opinion the drugs were possessed with the intent to sell, the conviction for [PWID at 1878-2019] was supported by the evidence.

Trial Ct. Op., 6/7/24, at 13-16, 21 (unpaginated) (some formatting altered).

- 9 -

Further, the trial court addressed Appellant's challenge to the sufficiency of the evidence at Docket No. 1780-2019 as follows:

During the March 7, 2022 trial, Kurt Zitsch, an agent with the Pennsylvania Office of Attorney General, testified that he is a narcotics agent within his office and was working in that capacity on October 29, 2018. (N.T., 3/7/22. pp. 40-41). On that date he was surveilling a controlled buy of drugs between a suspected drug seller and a confidential informant (hereinafter "CI"). (*Id.* at 42). Agent Zitsch was working with another agent, who was transporting the CI to the buy. (*Id.* at 43-44). Agent Zitsch watched from a parking lot as the CI approached a burgundy-colored Cadillac sedan, leaned into the passenger side of the vehicle and then returned to the other agent's car. (*Id.* at 45). Agent Zitsch never lost sight of the CI during the transaction on that date. (*Id.* at 46). Agent Zitsch provided surveillance for another controlled buy on November 26, 2018, in the same location as the October 29th buy. (*Id.* at 46-47). During this buy, the CI approached a white Chrysler sedan, leaned into the driver's side of the vehicle, and returned to the other agent's car. (*Id.* at 47).

Agent Zitsch testified that there were two other controlled buys that were conducted, one in December and one in January, and he was not present for the December buy. (*Id.* at 48). During the January buy, Agent Zitsch was part of the takedown team, which meant that he would assist with the arrest of the drug seller. (*Id.* at 49). He did not observe the buy that day, but rather, after the transaction was called out as a "good deal," the vehicle sped out of the parking lot at a high rate of speed and Harrisburg City Police lost the vehicle in the chase. (*Id.*). He recalled that the vehicle that day was the red Cadillac. (*Id.* at 50). Agent Zitsch testified that he was unable to see the driver of the vehicle. (*Id.*).

Sean Haggerty testified that he is a narcotics agent with the Pennsylvania Office of Attorney General and works in an undercover capacity. (*Id.* at 52-55). During the October 29th buy, Agent Haggerty searched the CI before getting into his vehicle and provided the funds with which the CI would make the buy. (*Id.* at 57). Agent Haggerty drove the CI to the location of the buy and at all times observed the CI. (*Id.* at 59-61). Upon returning to the vehicle, the CI handed over the purchased narcotics to Agent Haggerty. (*Id.* at 62). On November 26th and

- 10 -

December 26, 2018, Agent Haggerty drove the CI to the same location to conduct controlled buys. (*Id.* at 62-64). The same protocol was employed during these buys, where the CI would make the purchase and return to the vehicle and hand over the narcotics. (*Id.* at 63). Finally, on January 17th, Agent Haggerty drove the CI to the same location to conduct a controlled buy; however, as Harrisburg officers attempted to take the drug seller into custody, he fled. (*Id.* at 64). Because Agent Haggerty was attempting to collect the CI from the parking lot, he was able to see directly into the windshield of the fleeing vehicle as it was travelling in his direction. (*Id.* at 64). Agent Haggerty identified [Appellant], as the driver of the vehicle. (*Id.* at 65).

Daine Arthur testified that in October of 2018, he was working for the Pennsylvania Office of Attorney General with the Bureau of Narcotics Investigations Strategic Response Team. (*Id.* at 82-83). Agent Arthur was familiar with Appellant due to an investigation that began when a CI informed him that there was an individual by the name of "Briggs" selling crack cocaine within the city limits of Harrisburg. (*Id.* at 85). The same CI was used in the four controlled buys that were set up. (*Id.* at 86). Agent Arthur was present when the CI sent "Briggs" text messages . . . to set up the buys. (*Id.* at 88). During the October of 2018 buy, Agent Arthur followed Agent Haggerty, who was transporting the CI, to the Burger King parking lot on Cameron Street in Harrisburg. (*Id.* at 91). A burgundy Cadillac sedan arrived to conduct the deal. (*Id.* at 91). Following all four buys, Agent Arthur conducted searches of the CI. (*Id.* at 92). After the first buy, Agent Arthur recovered heroin and crack cocaine from the CI. (*Id.*).

Agent Arthur reviewed the surveillance video of the controlled buys in an effort to identify the individuals involved. (*Id.* at 94) (Commonwealth's Exh. No. 1). Based on the video images, Agent Arthur was able to identify the individual in the car as [Appellant]. (*Id.* at 96, 99) (Commonwealth's Exh. No. 15). The video further showed that there was no passenger in the car with Appellant during the controlled buy with the CI. (*Id.* at 97). There was an additional surveillance video taken during the October 29th controlled buy that showed another angle of the burgundy Cadillac entering the parking lot and the CI approaching the vehicle. (*Id.* at 100-101) (Commonwealth's Exh. No. 2.) That angle showed the license plate number of the vehicle which . . . identified Pamela Fuller as the owner of the vehicle. (*Id.* at 102).

- 11 -

The November 26th controlled buy was scheduled using the same number and location; however, this time a white Chrysler showed up for the buy. (*Id.* at 102-104). The CI turned over crack cocaine after that buy. (*Id.* at 105). The December 26th buy was arranged the same way, and the burgundy Cadillac sedan that was used in the previous buy was used. (*Id.* at 105-106). Crack cocaine was again recovered from the CI following the buy. (*Id.* at 107). The final buy on January 17th was arranged in the same way; the burgundy Cadillac appeared and following the buy, crack cocaine was recovered from the CI. (*Id.* at 108-109).

Following the January 17th buy, the CI returned to the car that Agent Haggerty was in and he indicated that it was a "good deal," and the Harrisburg Police, including members of the Street Crime Unit, were to attempt to take the seller into custody. (*Id.* at 116). When the Harrisburg Police units arrived, the burgundy Cadillac fled. (*Id.*). Once the Cadillac got on to Cameron Street, the Harrisburg Police terminated their pursuit. (*Id.*). Following the incident, the CI was scared to do any more controlled buys. (Id. at 117).

Nicholas Ishman, a detective with the Harrisburg Bureau of Police, testified that on March 14, 2019, he was executing an arrest warrant in this matter. (*Id.* at 137-138). Two groups were involved in this, the Dauphin County Crisis Response Team and the Street Crimes Unit. (*Id.* at 138). Once Appellant was in custody, Detective Ishman overheard him taunting members of the street crimes unit saying: I got away from you guys, I smoked you guys. You guys didn't get me, or something to that effect. (*Id.* at 139). Detective Ishman also testified that Pamela Fuller is [Appellant's] mother. (*Id.* at 140).

\* \* \*

Regarding docket [1780-2019], Agent Haggerty identified Appellant as the driver of the vehicle that fled following the January 17, 2019 controlled buy. Agent Arthur further identified Appellant from the surveillance video that was obtained during the controlled buys. Finally, the car used in three of the buys was registered to Pamela Fuller, Appellant's mother. Further support for the conviction can be found in Detective Ishman's testimony that once arrested, Appellant taunted members of the street crimes unit indicating that he was the one that fled from the scene on January 17, 2019. Finally, after each of the buys, narcotics were recovered from the CI. Accordingly, at this docket, there

was also sufficient evidence to support Appellant's conviction for [PWID].

Trial Ct. Op., 6/7/24, at 16-20, 21 (unpaginated) (some formatting altered).

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence to support Appellant's convictions. *See Palmer*, 192 A.3d at 89. The trial court thoroughly addressed the sufficiency of the evidence supporting Appellant's convictions at both trial court dockets and concluded that he was not entitled to relief. Therefore, we affirm based on the trial court's analysis of this issue. *See* Trial Ct. Op. 6/7/24, at 12-21.

## Motion to Suppress

Appellant next claims that the trial court abused its discretion when it denied his motion to suppress at Docket No. 1878-2019. *See* Appellant's Brief at 33-35. Appellant argues that the search warrant lacked probable cause and the Commonwealth failed to establish a nexus between the sales of controlled substances and the residence where the warrant was executed. *See id.* at 35.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). Our scope of review "is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Barnes*,

296 A.3d 52, 55 (Pa. Super. 2023) (citing *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013)).

> Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the suppression courts are subject to our plenary review.

*Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa. Super. 2018) (citation omitted).

Upon review, we note that the certified record does not contain the affidavit of probable cause nor does it contain the notes of testimony from the suppression hearing. As this Court has explained,

> [i]t is an appellant's duty to ensure that the certified record is complete for purposes of review. In addition, our Court has stated [that] a failure to ensure that the record provides sufficient information to conduct a meaningful review constitutes waiver of the issue sought to be reviewed. Where portions of a proceeding are unrecorded, [the] appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures.

*Commonwealth v. Lopez*, 57 A.3d 74, 82 (Pa. Super. 2012) (citations omitted); *see also* Pa.R.A.P. 1923 (explaining that an appellant may provide a statement in the absence of a transcript and the manner for including such a statement).

Here, Appellant did not ensure that the affidavit of probable cause and notes of testimony from the suppression hearing were included in the certified

record, and there is no indication that Appellant took any steps to provide a statement in the absence of a transcript pursuant to Pa.R.A.P. 1923. Our appellate review is hampered, and we are unable to review Appellant's challenge to his motion to suppress because we do not have an adequate record. *See Commonwealth v. O'Black*, 897 A.2d 1234, 1238 (Pa. Super. 2006) (providing that when this Court is unable to review a claim because we do not have an adequate record, we find the claim waived); *see also In re L.J.*, 79 A.3d at 1087 (explaining that our review of an order denying a suppression motion is limited to the evidentiary record that was created at the suppression hearing). Accordingly, we conclude that this issue is waived. *See O'Black*, 897 A.2d at 1238.[11]

### Weight of the Evidence

In his next issue, Appellant contends that the verdicts were against the weight of the evidence.[12] *See* Appellant's Brief at 38. Appellant argues that

---

[11] In any event, were we to reach this issue, we would affirm on the basis of the trial court's opinion on this issue. *See* Trial Ct. Op. 6/7/24, at 8-12 (unpaginated).

[12] We note that Appellant preserved this issue as he filed timely post-sentence motions challenging the weight of the evidence and requesting a new trial at both trial court dockets. *See* Pa.R.Crim.P. 607(A)(3). Further, we note that generally, a post-sentence motion must be filed within ten days after the imposition of sentence. *See* Pa.R.Crim.P. 720(A)(1). Here, the trial court sentenced Appellant on April 20, 2022. The last day to file a timely post-sentence motion was Monday, May 2, 2022, as the tenth day after sentencing fell on a Saturday. *See* 1 Pa.C.S. § 1908 (for computations of time, if the last day of any such period shall fall on a Saturday, Sunday, or any legal holiday, *(Footnote Continued Next Page)*

the guilty verdicts at both trial court dockets shock one's sense of justice and entitle him to a new trial. ***See id.*** at 38-39.

When reviewing the denial of a motion for a new trial based on weight of the evidence, we are governed by the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted). As this Court has repeatedly stated,

> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
>           \*      \*      \*
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial

_____

such day shall be omitted from the computation). Accordingly, Appellant's post-sentence motion, which was filed on May 2, 2022, was timely.

- 16 -

judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered).

Appellant's entire weight-of-the-evidence argument consists of five sentences. *See* Appellant's Brief at 38-39.[13] However, Appellant fails to

_____

[13] Appellant's entire weight-of-the-evidence argument is as follows:

[Appellant] asserts that the guilty verdicts at both dockets were so contrary to the weight of the evidence so as to shock one's sense of justice. The verdicts were against the weight of the evidence where the entirety of the evidence offered to prove that [Appellant] was engaged in the sale of controlled substances was so unreliable, contradictory and incredible that the jury's verdict was based on conjecture and thus was not appropriate to sustain a conviction beyond a reasonable doubt for PWID under 35 [P.S. §] 780-113(a)(30). [Appellant] is thus entitled to a new trial on both dockets.

In accord with Pa.R.Crim.P. 607, [Appellant] previously raised his weight of the evidence claims in his post-sentence motion. [Appellant] respectfully submits that because there was insufficient evidence to convict him of PWID on either docket, the verdicts in both cases were against the weight of the evidence presented and thus should be stricken and . . . Appellant should be granted a new trial on both dockets.

*(Footnote Continued Next Page)*

develop any argument or present citation to relevant legal authority establishing that the trial court abused its discretion in denying his motion for a new trial based on the weight of the evidence. "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review." *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (holding that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (citations omitted)). Accordingly, we conclude that Appellant waived this issue on appeal.[14]

_____

Appellant's Brief at 38-39 (some formatting altered).

[14] In any event, even if Appellant had developed an argument, we would conclude that the trial court did not abuse its discretion by denying Appellant's motion for a new trial based on the weight of the evidence. In its opinion, the trial court correctly states that a jury's verdict should be disturbed only "if it is so contrary to the evidence as to shock one's sense of justice." Trial Ct. Op. 6/7/24, at 22 (unpaginated) (quoting *Commonwealth v. Taylor*, 63 A.3d 327, 330 (Pa. Super. 2013)). We reiterate that the jury, sitting as the finder of fact, was free to believe some, all, or none of the evidence presented and to determine the credibility of the witnesses. *See Spence*, 290 A.3d at 311. Further, resolving contradictory or conflicting testimony, and determining credibility are matters for the jury to resolve. *See id.* This Court will not re-weigh the evidence or assess credibility, as this Court cannot substitute its judgment for that of the finder of fact. *See id.* On this record, were we to reach this issue, we would conclude that there was no abuse of discretion in denying Appellant's motion for a new trial. *See id.*; *Windslowe*, 158 A.3d at 712.

**<u>Discretionary Aspect of Sentence</u>**

In his final issue, Appellant argues that the four-to-eight-year sentence for PWID at Docket No. 1780-2019, and the five-to-ten-year sentence for PWID at Docket No. 1878-2019 were excessive, and he claims that the trial court failed to consider mitigating factors. **See** Appellant's Brief at 27. Appellant further argues that the trial court also abused its discretion in ordering Appellant to serve the sentences at Docket Nos. 1780-2019 and 1878-2019 consecutively. **See id.**

Appellant's arguments challenge the discretionary aspects of his sentence. **See, e.g., Commonwealth v. Disalvo**, 70 A.3d 900, 902-03 (Pa. Super. 2013) (explaining that a claim that the trial court failed to consider mitigating factors is a challenge to discretionary aspects of the sentence); **Commonwealth v. Ahmad**, 961 A.2d 884, 886 (Pa. Super. 2008) (explaining that a challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence); **Commonwealth v. Austin**, 66 A.3d 798, 807-08 (Pa. Super. 2013) (concluding that the appellant's challenge to the imposition of consecutive sentences was a challenge to the discretionary aspects of sentencing).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Derry**, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Grays*, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record reflects that Appellant preserved his issues by raising them in his post-sentence motion, filing a timely notice of appeal and a court-

- 20 -

ordered Rule 1925(b) statement, and including a Rule 2119(f) statement in his brief. *See Corley*, 31 A.3d at 296. Further, Appellant's claims presents a substantial question for our review. *See Commonwealth v. Miller*, 275 A.3d 530, 534 (Pa. Super. 2022) (providing that a claim that the trial court failed to adequately consider mitigating factors and imposed an excessive sentence, presents a substantial question); *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (concluding that although the sentencing court's exercise of discretion in imposing sentences consecutively does not ordinarily raise a substantial question, a challenge to the imposition of consecutive sentences as unduly excessive, together with a claim that the sentencing court failed to consider rehabilitative needs and mitigating factors presents a substantial question).

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation [(PSI)].

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

***Commonwealth v. Raven***, 97 A.3d 1244, 1253-54 (Pa. Super. 2015) (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of [the] offense in relation to [the] impact on [the] victim and [the] community, and [the] rehabilitative needs of the defendant[.]" ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the

sentencing court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Schutzues***, 54 A.3d 86, 99 (Pa. Super. 2012) (citations omitted).

Additionally, the trial court "must consider the sentencing guidelines." ***Fullin***, 892 A.2d at 848 (citation omitted). However, "where the trial court is informed by a PSI [report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Edwards***, 194 A.3d 625, 638 (Pa. Super. 2018) (citation omitted and formatting altered). Further, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (citation omitted).

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. ***See Commonwealth v. Kurtz***, 294 A.3d 509, 536 (Pa. Super. 2023), *appeal granted on other grounds*, 306 A.3d 1287 (Pa. 2023). In conducting appellate review, this Court "cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating factors[.]" ***Id.*** (citation omitted).

The trial court addressed its considerations in fashioning Appellant's sentence as follows:

Prior to the imposition of sentence, the trial court noted that shortly after being released on parole from state prison, Appellant engaged in criminal activity. (N.T., 4/20/22, p. 10). The court further noted that the time Appellant spent in state prison did not seem to have a rehabilitative impact on him. (*Id.*). The court read the [PSI] report and acknowledged the support of Appellant's family. (*Id.*). The court referenced the ongoing problem with fentanyl and the amount of fentanyl and heroin . . . Appellant was convicted of possessing. (*Id.*). Finally, the court referenced the ongoing drug epidemic in administering a sentence that would protect the public from Appellant's drug dealing behavior. (*Id.* at 12).

Trial Ct. Op. 6/7/24, at 5 (unpaginated).

After review, we discern no abuse of discretion by the trial court. *See* *Raven*, 97 A.3d at 1253. To the extent Appellant challenges the trial court's decision to impose his sentences for PWID consecutively, we note that it is well settled that the imposition of consecutive or concurrent sentences is left to the sound discretion of sentencing court, and Appellant is not entitled to a volume discount on his crimes. *See Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014); *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. 1995).

Further, although Appellant argues that his sentences were excessive, he also concedes that his sentences were within the guideline range. *See* Appellant's Brief at 22, 28. We reiterate that sentences that are within the guidelines are considered appropriate under the Sentencing Code. *See* *Moury*, 992 A.2d at 171.

The record also reflects that the trial court considered Appellant's PSI report at sentencing. *See* N.T., 4/20/22, at 2, 10. Accordingly, we presume

the trial court was aware of the mitigating factors and considered them when imposing Appellant's sentence.  **See Edwards**, 194 A.3d at 638; **see also Kurtz**, 294 A.3d at 536.

Finally, the record confirms that the trial court considered the sentencing guidelines, the need to protect the public, and thoroughly explained its reasons for the sentences imposed.  Specifically, the trial court referred to Appellant's prior criminal record, his inability to rehabilitate and that Appellant engaged in selling drugs very soon after he was paroled on a separate case, the fact that Appellant was selling fentanyl and the current fentanyl epidemic. **See** N.T., 4/20/22, at 9-12; **see also** Trial Ct. Op. 6/7/24, at 5 (unpaginated).  This Court will not re-weigh the trial court's considerations of sentencing factors on appeal.  **See Kurtz**, 294 A.3d at 536; **see also Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa. Super. 2009) (explaining that the appellate court cannot reweigh sentencing factors and impose its judgment in place of sentencing court where the lower court was fully aware of all mitigating factors).  Accordingly, we have no basis to conclude that Appellant's sentence was clearly unreasonable.  **See Raven**, 97 A.3d at 1253-54; **see also Commonwealth v. Antidormi**, 84 A.3d 736, 760 (Pa. Super. 2014).  Therefore, we conclude that Appellant is not entitled to relief on this claim.

On this record, we conclude that Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/12/2025